**WOLGEMUTH et v STATE**
**TANNER et v STATE**

Ohio Appeals, 2nd Dist, Franklin Co

No 2916 & 2965. Decided Nov 26, 1938

James A. White, Columbus, and Horace S. Kerr, Columbus, for defendants-appellants.

John L. Davies, City Attorney, Columbus, Charles R. Petree, Asst. City Attorney, Columbus, for plaintiffs-appellees.

## OPINION

### By HORNBECK, J.

The defendants were prosecuted in the Municipal Court of the City of Columbus upon separate affidavits charging that each defendant did, on or about the 1st day of July, 1937, in the city of Columbus, Franklin County, Ohio, unlawfully advertise and announce himself to be a practitioner of medicine and surgery in one of its branches, Naprapathy, before he had obtained a certificate from the State Medical Board of the State of Ohio in the manner required by law in that the said defendant did unlawfully announce himself as such practitioner by having inserted or permitting to be inserted a certain advertisement and announcement containing the following name, words, letters, abbreviations and title in the Columbus Telephone directory of the Ohio Bell Telephone Company, issued in July, 1937, and in use in the aforesaid city, county and state. A copy of the advertisement is set forth, which in each instance carried the name of the defendant, followed by the letters "D. N." and his address, and further, a copy from the page in the directory under the classified telephone ads setting forth the name of each defendant under the general caption, "Naprapaths". All plead not guilty, went to trial and were convicted.

The affidavits against Wohlgemuth and Leonard were sworn to of date August 23, 1937. The affidavits against the other defendants were sworn to October 11, 1937. Each of the defendants was fined $200.00 and costs upon charge against him.

Defendant Leonard was further charged with unlawfully opening and conducting an office and place for the practice of medicine and surgery, to-wit, Naprapathy, before he had obtained a certificate from the State Medical Board of the State of Ohio; that his office was conducted in a building at 2248 Sullivant Avenue, Columbus, Ohio, contrary to §§1274-1 and 12694, GC.

Defendant demurred to the affidavit as being insufficient in law, which demurrer was overruled. He then went to trial, was found guilty and after motion for new trial was fined $200.00 and costs. All of these cases were carried to the Common Pleas Court for review on petitions in error and there affirmed. From these judgments of

the Common Pleas Court this appeal is prosecuted.

The petitions in error, so designated in all the cases, are identical and say that the court erred in the following particulars:

(1) In admitting testimony to which defendants below objected.

(2) In overruling motions of defendants to dismiss affidavits.

(3) In overruling demurrers.

(4) The fines imposed were unreasonable and excessive.

(5) The fines appear to have been given under passion and prejudice.

It will be noted that none of the petitions in error assigns as a ground of error that the fine and judgment of the court was contrary to law, not supported by or against the weight of the evidence, nor that the court erred in overruling the motions for new trial.

The motions for new trial in the Wohlgemuth case and in the two cases against Leonard set out only the first, second and fourth grounds of their petitions in error and do not challenge the verdicts, findings and judgments upon the weight of the evidence nor the sufficiency thereof. In the cases against the other defendants the motions for new trial urged that the court erred in its charge to the jury in refusing to charge the jury as requested by counsel for defendants; that the verdict was contrary to law not sustained by the evidence; that there are other errors apparent upon the face of the record, although as we have heretofore said, none of these claims appears in their petitions in error.

We make these extended observations because they become of interest in our subsequent discussion.

We have carefully examined the briefs of respective counsel and are made cognizant of the injustice of the prosecutions as viewed by the defendants and their counsel. It may be observed that much of the weight of the argument of counsel for the defendants is directed to the administration of the Medical Act rather than to its organic validity, although of course this is also challenged. If the Medical Board has not accorded to the defendants the right to have an examination of their qualifications to engage in the limited practice of medicine an action in mandamus would lie to compel the board to perform its stated obligations under the law. However, this fault in administration, if any attend, can not avail to justify the defendants in holding themselves out as Naprapaths without

first obtaining a certificate to practice that limited branch of medicine and surgery under §1274-1, et seq., GC, if such legislation is constitutional.

Much of the briefs is directed to the unconstitutionality of the act creating the State Medical Board and defining its powers and particularly to the sections fixing the requisite qualifications of those who desire to engage in the limited practice of medicine and particularly as relates to these defendants. It is urged with much force that the educational requirements enjoined upon the defendants to engage in the practice of their profession, Naprapathy, under §1274-2, GC, is unreasonable, oppressive and therefore unconstitutional.

Sec 1274-2 GC, insofar as our germane question, provides first for an examination of those who have practiced any of the limited branches of medicine in Ohio for a period of at least one year prior to June 1, 1915, and who make application prior to October 1 1915. We are not informed whether the defendants or any of them would come withing this proviso.

The section further provides:

"The examination of all applicants shall be conducted under rules prescribed by the board and at such times and places as the board may determine."

The record is silent as to the rules promulgated by the board by virtue of the authority vested in it by this statute. The section further provides:

"Such examination shall be given in anatomy, physiology, chemistry, bacteriology, pathology, hygiene, diagnosis, and in such other subjects appropriate to the limited branches of medicine or surgery, certificate to practice which is applied for, as the board may require."

It is asserted that there is no such relation between the knowledge of chemistry and bacteriology and the practice of Naprapathy as would make it essential that practitioners in such branch of healing should be required to pass an examination in such subjects.

We might indulge in general observations of the wide discretionary authority that is vested in the Legislature in defining the requirements which shall be exacted from those who are to be licensed to engage in the learned professions but it would serve no good purpose because the very sections here under attacked were

brought to the attention of the Supreme Court in a case involving the practice of chiropractic and coming up from Cuyahoga County in 1921, namely, **Williams et v Scudder et, 102 Oh St 305.** The opinion by Judge Wanamaker is so comprehensive and so completely meets all of the objections urged by counsel in the instant case that it would be a waste of time for ▮▮▮▮▮ us to prolong this opinion on the subject by extended discussion. Suffice to say that the constitutionality of the Act and that part thereof which is directly challenged by these proceedings has been determined in favor of the state by the Supreme Court and obviously the tribunal which should set that judgment aside if it is to be done is the highest court and not this intermediate reviewing court.

Other cases in point in Ohio with which counsel no doubt are familiar are:

**Nesmith v State, 101 Oh St 158.**
**Shaw v State, 101 Oh St 507.**

The opinion in Williams v Scudder, supra, at pages 313 and 314 is especially pertinent to this cause:

"Surely there is nothing arbitrary, discriminating, irrelevant or unreasonable about these qualifications (namely to practice medicine and surgery) from the viewpoint of personal and professional fitness for efficient public service in the conservation of the public health. Neither are their well founded objections to be taken to any of the other sections of the Act as a whole, so far at least as relevant to this case. The claim is made, however, that the right of liberty to contract, guaranteed by both the State and Federal Constitutions, denies to the State Legislature the power to restrict the same by prescribing such qualifications for the practice of medicine and surgery as are prescribed by the Medical Practice Act. The authorities, however, are substantially uniform that the Legislature may enact reasonable regulations for the examination and registration of physicians and surgeons and for the practice of medicine and surgery and the art of healing generally. This authority is recognized as full and complete, applying both to ethical and educational standards in which the Legislature is given a wide discretion as to what shall be a wise and appropriate requirement before any person shall enter that field of activity which is so intimately and vitally related to the public health."

The Medical Practice Act was also under consideration in **Triplett v State, 23 O.C.C. (N.S.) 172,** and there declared to be constitutional. The authorities are uniform to effect that the act is promulgated by virture of the police power of the state to regulate measures affecting the public health.

In Lambert v Yellowley, 272 U. S. 581, 49 A.L.R. 576, it is said:

"There is no right to practice medicine which is not subordinate to the police power; * * * ."

It is argued with much strength that the fines assessed are unreasonable and excessive and appear to have been given under the influence of passion and prejudice and it is asserted that the trial judge may have been prejudiced because of his relationship to a physician. We can not consider this last statement because it does not appear in the record and no attempt was made to urge this claim upon the trial judge.

It is not, nor could it be urged that the fines provided by the statute are excessive so as to come within the constitutional prohibition against cruel and unusual punishment and the imposition of excessive fines but as we understand it is claimed that the fines in these cases, because of the facts and circumstances surrounding them are excessive. The difficulty with this contention is that the facts and circumstances which in any wise tend to establish the contention that the fines should not have been assessed, or if so they should not have been so high, are to be found in the briefs of counsel and not in the record of testimony. Counsel attempted without success to develop the claim of bad faith. It is obvious that it would be an unusual condition which would cause a reviewing court to say that a fine imposed was excessive when it was well within the limits of the fine authorized ▮▮▮▮▮ under the statute violated. These fines did not approach the maximum. In fact they were each less than one-half the maximum. The record will not support the claim that they were excessive.

Again the assertion that the trial judge was prejudiced is found only in the briefs and not in the record. It was incumbent upon counsel, if they expected to rely upon this claim of error, that they bring it to the attention of the trial judge and cause ruling to be made upon it. In the absence of such precautionary procedure,

the question can not be urged for the first time on review.

In Tumey v State, 47 Sup. Ct. Rep., 437, it was said that:

"Counsel may halt the trial by objection seasonably raised because of the disqualification of the judge."

We were requested in the oral argument and are again urged in the supplemental brief to consider and determine the constitutionality of §12699, GC, which provides:

"All fines collected under the next five preceding sections shall be paid to the State Medical Board."

The preceding sections include those under which the defendants were charged and convicted.

We are cited to the section which requires the municipal clerk to turn over all fines to those entitled and it is urged that this is in direct conflict with §12699 GC. There are several reasons which preclude the defendants' urging the constitutionality of the statute challenged. ▮▮▮▮▮▮▮ The defendants are not interested any differently than any other citizen in the disposition of the fines. If the constitutionality of the statute is to be attacked it should be done by the city solicitor, the prosecuting attorney or the attorney general, depending upon what political subdivision is affected by the wrongful and unconstitutional diversion of fines under the section. A taxpayer would only be permitted to institute the action if the duly constituted public authority refused so to do. Then, finally, if it be conceded that §12699 GC is unconstitutional, its invalidity would not by force thereof invalidate the five preceding sections, each of which carries substantive provisions of subject matter independent of and differing from the subject matter of §12699 GC. This section relates to the disposition only of the fines imposed in these cases and does not affect the right to impose the fines, which right is found in the other sections. If the section was declared to be unconstitutional there would be left a general provision under which the fines could be disbursed but if there were no provision therefor, still it would not render ineffective the fines assessed.

There was no error in overruling the demurrers, as each affidavit stated an offense.

It is argued orally that the evidence did not support the convictions and though this is not assigned as a ground of error, we consider it.

We would have much difficulty in supporting these convictions if the only holding out by the defendants was that indicated by the initials "D. N." after their names in regular listing in the telephone directory. Such designation is not mentioned in the statute, §1286, GC, and must come under the further proviso thereof,

"Or any other title in connection with his name which in any way represents him as engaged in the practice of medicine, surgery or mid-wifery in any of its branches * * *".

The proof is insufficient to disclose that the initials "D. N." represent a title such as would imply the practice of medicine and is insufficient to show the generally accepted meaning of such initials.

There is much discussion respecting Naprapathy and one witness testifies that "D. N." may also mean Director of Naprapathy which indisputably, on this record, is not the practice of medicine.

However, the carrying of the names of the defendants under the classification in the directory of Naprapaths is a ▮▮▮▮▮▮ sufficient holding out of the practice of medicine as would meet the requirements of the statute. That the defendants authorized the printing of their names in the July directory of 1937 is well established. A typical service card signed by each defendant, or admittedly carrying an authorized signature of a defendant read: Name of person listed followed by abbreviated title and residence, then under the heading "Classified Heading" the word "Naprapaths". This is sufficient to establish an authorization by the defendants to carry their names under such classification.

It is further urged that inasmuch as this directory, bearing the date of July 1, 1937, was not issued to the public until on or about August 1, 1937, there is no proof of the charge in the affidavit that the offenses were committed on or about July 1, 1937. Time is not of the essence of the offense charged and inasmuch as it clearly appear that the charge was directed to the carrying of the names in the directory bearing date July 1, 1937, there would not be such material variance in the charge and the proof as to preclude the finding of guilt as charged.

We are satisfied that the evidence was sufficient to permit the jury, within the rules of law to make proper determination

of the guilt of the defendants on the complaints that they held themselves out as practicing medicine by the carrying of their titles in the telephone directory dated July 1, 1937.

The second charge against defendant Leonard is supported in the record, if at all, upon the evidence of a witness by the name of Mary Limotta who said that at her instructions her daughter had called in a doctor; that Mr. Leonard came to the witness' home, inquired of her condition and gave her a pill for her headache. This was done at her home and not at defendant's office. The following questions were put and answers given:

"Q. Did you go to his office?
A. Yes, I went in the office.
Q. Where was that, on what street?
A. Sullivant Avenue.
Q. Was that the same day or later?
A. No, about four or five days after when I was up on my feet.
Q. Did he do anything there?
A. Well he tested my teeth and tested my blood you see.
Q. Tested your blood? A. Yes.
Q. How many trips did you make to his office?
A. Three times."

It does not appear that the defendant carried any designation on the windows or doors of his office holding out to the public that he was engaged in the practice of medicine in any of its branches. There is no showing that the defendant prescribed any treatment at his office, advised the witness as to the result of any test of her teeth or her blood or gave her any advice as to what she should do to better her physical condition. There is no showing of what the test of the teeth and blood consisted and that the blood and teeth were tested is but a conclusion of the witness. It could not be inferred from the record that the mere testing of teeth would have been the practice of medicine. There is then left but the bare statement that the defendant tested her blood. This without further amplification, in our judgment is insufficient to support the verdict that the defendant was conducting an office and place for the practice of medicine and surgery.

The judgment of the Common Pleas Court will be affirmed in all particulars except as to the one charge against the defendant as to which it will be reversed and cause re-manded in accordance with this opinion.
BARNES, PJ, HORNBECK and GEIGER, JJ, concur.